# In re AIRPORT CAR RENTAL ANTITRUST LITIGATION.

### No. MDL 338.

United States District Court, N. D. California.

April 24, 1979.

---

Ronald S. Adelman, John R. Dwyer, Jr., Curtis W. Carlsmith, Honolulu, Hawaii, for plaintiff Pacific Auto Rental Corp.

Fujiyama, Duffy, Fujiyama & Koshiba, Wallace S. Fujiyama, Rodney M. Fujiyama, Paul H. Sato, Honolulu, Hawaii, Phillips, Nizer, Benjamin, Krim & Ballon, Robert R. Salman, Martin Stein, New York City, for defendant Budget Rent A Car Systems, Inc.

RENFREW, District Judge.

Plaintiff Pacific Auto Rental Corporation, doing business as Dollar Rent A Car Systems of Hawaii, Inc. ("Pacific Auto"),[1] seeks disqualification of two law firms retained by defendant Budget Rent A Car Systems, Inc. ("Budget"), to represent Budget in an antitrust suit brought by Pacific Auto against Budget and various other car rental companies. This suit is one of several antitrust cases that have been consolidated pursuant to the procedures governing multidistrict litigation. Pacific Auto's suit ("the Hawaii action") was originally filed in the United States District Court for the District of Hawaii and was transferred to this Court on November 15, 1978, by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407.

Pacific Auto has moved to disqualify the Hawaii law firm of Fujiyama, Duffy, Fujiyama & Koshiba ("the Fujiyama firm") and their co-counsel, the New York law firm of Phillips, Nizer, Benjamin, Krim & Ballon ("Philips Nizer"). Phillips Nizer was originally retained to represent Budget as plaintiff in an action against Hertz Corporation, Avis Rent A Car System, Inc. and National Rent A Car System, Inc., filed in the Northern District of California in April 1977.[2] In June 1978, when the Hawaii action was filed by Pacific Auto, Budget retained Phillips Nizer to act as defense counsel in that case. Under Local Rule 1(e) of the District of Hawaii, an attorney who is not an active member of the District of Hawaii bar may be granted permission to participate in a particular case before the United States District Court for the District of Hawaii only if that attorney associates as co-counsel an active member of the bar of the District of Hawaii. In order to comply with Local Rule 1(e), in July 1978, Phillips Nizer associated the Fujiyama firm as co-counsel in the Hawaii action.

Pacific Auto's motion to disqualify the Fujiyama firm and Phillips Nizer is based upon the Fujiyama firm's prior relationship with Pacific Auto. The evidence presented

---

1. Pacific Auto is a franchisee of Dollar Rent A Car System.

2. In March 1978 the Judicial Panel on Multidistrict Litigation centralized Budget's suit and five other actions in the Northern District of California for coordinated or consolidated pretrial proceedings before this Court. *In re Airport Car Rental Antitrust Litigation,* 448 F.Supp. 273 (Jud.Pan.Mult.Lit.1978). Pacific Auto's suit was later transferred to this Court for inclusion in those consolidated proceedings.

at the hearing on the motion for disqualification, held February 15, 1979, demonstrated that the Fujiyama firm had received confidential information from Pacific Auto and had agreed to represent Pacific Auto on a matter substantially related to the issues presented in Pacific Auto's lawsuit against Budget. Consequently, the Fujiyama firm must be disqualified from representing Budget in the Hawaii action. Phillips Nizer, however, need not be disqualified. There is no indication in the record that Phillips Nizer directly or indirectly received any confidential information regarding Pacific Auto from the Fujiyama firm. Nor is there any evidence that Phillips Nizer knew of the Fujiyama firm's prior representation of Pacific Auto on a matter related to the Hawaii action when they associated the Fujiyama firm as co-counsel. In light of the particular facts of this case, set forth more fully below, Phillips Nizer's role as co-counsel to the disqualified Fujiyama firm does not compel Phillips Nizer's disqualification.

### Factual Background

In October or November 1976, two officers of Pacific Auto, Harry Mehtarian and Alan Robin, met with attorney Wallace S. Fujiyama ("Fujiyama") of the Fujiyama firm and asked Fujiyama to represent Pacific Auto in its efforts to obtain an on-airport car rental concession at the Honolulu International Airport ("Honolulu Airport"). At the hearing on the disqualification motion, Robin, Vice-President of Pacific Auto, testified regarding this meeting with Fujiyama. According to Robin, the primary purpose of the meeting was to discuss entry at the Honolulu Airport, although some mention may also have been made of the Hilo Airport. Pacific Auto had unsuccessfully attempted to obtain a Honolulu Airport car rental concession in 1974 and believed that Budget, Pacific Auto's principal competitor in the discount car rental market in Hawaii, had been involved in blocking their entry. Robin and Mehtarian asked Fujiyama to speak with public officials involved in granting on-airport car rental concessions in order to persuade

them that it would be in the public interest to have a Dollar Rent A Car concession at the Honolulu Airport. In the course of this conversation, Robin and Mehtarian discussed with Fujiyama Pacific Auto's corporate goals, financial strengths and weaknesses, use of tax loss carry-forward, pricing and marketing strategy, and fleet size, emphasizing the importance to the company of obtaining a concession at the Honolulu Airport. Robin testified that much of the information imparted to Fujiyama was information that Pacific Auto did not generally make known to the public and would not want to disclose to its competitors. In addition to providing Fujiyama with this background information on the company, Robin and Mehtarian gave Fujiyama a file containing documents related to the company's efforts to obtain on-airport car rental concessions in Hawaii. This file included documents from the legal file kept by the attorney who had represented the company in its earlier attempts to gain entry at the Honolulu Airport.

Although Fujiyama did not wish to establish a fee arrangement at this initial meeting, he explained his usual practices regarding fees and he agreed to contact public officials who might be able to assist Pacific Auto in obtaining a Honolulu Airport car rental concession. Fujiyama explained that it could take some time before he made any progress on the matter. Robin testified that the entire meeting with Fujiyama lasted 1 to 1½ hours.

The affidavit of Harry Mehtarian, submitted in support of plaintiff's motion to disqualify, corroborates Robin's testimony concerning the meeting with Fujiyama. Mehtarian, President of Pacific Auto, specifically states that Fujiyama agreed to assist Pacific Auto in its efforts to obtain a concession at the Honolulu Airport and that during the conversation with Fujiyama, Robin and Mehtarian had emphasized their belief that Budget had opposed Pacific Auto's entry at that airport. The affidavit further states that confidential matters were discussed at the meeting with Fujiyama and that a file regarding Pacific Auto's

efforts to obtain an on-airport car rental concession was given to Fujiyama.

Mehtarian's affidavit also describes a later meeting with Rodney Fujiyama, the son of Wallace Fujiyama and an attorney at the Fujiyama firm. According to the affidavit, approximately two months after the initial meeting with Wallace Fujiyama, Mehtarian inquired about the progress being made on the concession application and was advised by Rodney Fujiyama that his father was working on the matter. At this meeting, Rodney Fujiyama and Mehtarian discussed the possibility of the Fujiyama firm handling all of Pacific Auto's and Mehtarian's legal business.

After that meeting, both Mehtarian and Robin repeatedly attempted to contact Wallace Fujiyama by telephone, but they were told that he was unavailable and their calls were not returned. In approximately March 1977, Robin called Dr. Richard Lam, a friend of Fujiyama's who had originally introduced Robin to Fujiyama, and asked Lam to inquire whether Fujiyama had made any progress on the concession application. Robin testified that Lam called back and reported that he had spoken to Fujiyama, who had said that he was working on the matter. Finally, Robin became concerned about the delay and decided he should consult another attorney. In June 1977 Pacific Auto retained the firm of Carlsmith, Carlsmith, Wichman & Case to assist the company in its efforts to gain entry at various Hawaii airports. Upon request, the Fujiyama firm transferred the file obtained from Robin and Mehtarian to the Carlsmith firm. The Fujiyama firm never billed Pacific Auto for its legal services.

Prior to the fall of 1976, the Fujiyama firm had done legal work for Transamerica,

the parent corporation of Budget, and Fujiyama states in his affidavit that he disclosed this fact to Robin and Mehtarian at their meeting. In January 1977, after Fujiyama had agreed to represent Pacific Auto, the Fujiyama firm began to represent Budget on various matters, including an antitrust suit that, according to Fujiyama, was not related to this antitrust suit. In June 1978 the Fujiyama firm agreed to serve as co-counsel in the Hawaii action. In doing so, the firm undertook representation of Pacific Auto's adversary in a suit involving issues that are substantially related to the matter on which Fujiyama agreed to represent Pacific Auto.[3]

The complaint in the Hawaii action alleges that Budget and other defendant car rental companies conspired to restrain trade unreasonably and to monopolize trade in the market of car rental concessions on the premises of the Honolulu Airport, in violation of Sections 1 and 2 of the Sherman Act and in violation of antitrust laws of the State of Hawaii. Among other allegations, the complaint states that Budget and the other defendants "[o]pposed in bad faith Dollar's [Pacific Auto's] efforts and applications for entry into the on-airport car rental market at Honolulu International Airport."

### Plaintiff's Motion to Disqualify the Fujiyama Firm

Plaintiff's motion to disqualify the Fujiyama firm is based primarily upon Canon 4 of the ABA Code of Professional Responsibility, which states that "[a] lawyer should preserve the confidences and secrets of a client," and upon the Disciplinary Rules and Ethical Considerations pertaining to that canon. Although the ABA Code may be relied upon as setting forth basic principles of legal ethics, the Court notes that under the Local Rules of the Northern District of

---

**3.** Under many cases decided under the ABA Code of Professional Responsibility, the fact that the Fujiyama firm had represented Pacific Auto on a matter substantially related to the case at bar would compel disqualification here, even if no showing had been made that Pacific Auto had conveyed confidential information to Fujiyama. *See, e. g., American Roller Co. v. Budinger*, 513 F.2d 982 (3 Cir. 1975); *General*

*Elec. Co. v. Valeron Corp.*, 428 F.Supp. 68 (E.D. Mich.1977). *See also Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc., et al.* (7 Cir. Feb. 27, 1979) (stating that under the "substantial relationship" test it is irrebuttably presumed that the individual attorney who dealt with the former client had access to confidential information).

California, attorneys practicing before this Court are governed by the Rules of Professional Conduct of the State Bar of California. Local Rule 110–4 provides in pertinent part:

"Every member of the bar of this court and any attorney permitted to practice in this court under Local Rule 110–2 shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto * * * ."

■ Under the Rules of Professional Conduct of the State Bar of California, the Fujiyama firm must be disqualified. Rule 4–101 states:

"A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

The primary purpose of this rule is to protect the confidential relationship that exists between attorney and client. *Goldstein v. Lees*, 46 Cal.App.3d 614, 619, 120 Cal.Rptr. 253, 255 (1975); *Jacuzzi v. Jacuzzi Bros., Inc.*, 218 Cal.App.2d 24, 28, 32 Cal.Rptr. 188, 191 (1963). Under Section 6068(e) of the California Business and Professions Code, "It is the duty of an attorney * * * [t]o maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." In keeping with the policies underlying Section 6068, the California courts have interpreted Rule 4–101 and its predecessor, former Rule 5, as prohibiting an attorney from accepting employment that threatens the revelation or use of a former client's confidences. *See Goldstein v. Lees, supra*, 46 Cal.App.3d at 620, 120 Cal.Rptr. at 256. The California Supreme Court has stated that Rule 4–101, then Rule 5, should be construed as providing that

" 'the subsequent representation of another against a former client is forbidden not merely when the attorney will be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he may be called upon to use such confidential information.' " *Sheffield v. State Bar of California*, 22 Cal.2d 627, 630, 140 P.2d 376, 378 (1943), *quoting Galbraith v. State Bar of California*, 218 Cal. 329, 23 P.2d 291, 292 (1933).

■ Therefore, although this Court does not find that any member of the Fujiyama firm revealed any confidential information received from Pacific Auto or used that information to Pacific Auto's disadvantage in the case at bar, the Court nevertheless concludes that the Fujiyama firm must be disqualified from representing Budget in the Hawaii action. Absent the informed and written consent of Pacific Auto, such representation violates Rule 4–101 of the California Rules of Professional Conduct.[4]

---

**4.** The ABA Code of Professional Responsibility would compel the same result. Canon 4 ("A lawyer should preserve the confidences and secrets of a client"), Canon 5 ("A lawyer should exercise independent professional judgment on behalf of a client"), and Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") have been relied upon as grounds for disqualification in cases where attorneys have accepted employment adverse to the interests of a former client. *See, e. g., Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2 Cir. 1973); *Richardson v. Hamilton International Corporation*, 469 F.2d 1382 (3 Cir. 1972). *See also Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 n.17 (2 Cir. 1977) (behavior that violates Canon 4 may also constitute a breach of Canon 5's duty of undivided loyalty).

In fact, former Canon 6, a predecessor of Canon 4, explicitly stated:

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

*See Emle Industries, Inc. v. Patentex, Inc., supra*, 478 F.2d at 570. The revisions of the canons made no change in this settled principle of legal ethics. *Id.* at 570 n.6.

■ The Fujiyama firm opposes the motion for disqualification on several grounds. One of their primary arguments is that to the best of Wallace Fujiyama's recollection, the meeting with Robin and Mehtarian concerned Pacific Auto's desire to gain access to the Hilo Airport, rather than the Honolulu Airport. This is directly contradictory to the very credible testimony of Robin. Robin acknowledged that the Hilo Airport may have also been discussed, but he asserted that the primary purpose of the meeting was to discuss Pacific Auto's prospects of obtaining a concession at the Honolulu Airport. The Fujiyama firm does state in their brief on the disqualification issue that "[t]he Fujiyama Firm has admitted that they are human, that there could be an error, and that the substantial portion of their Affidavits are based upon their best recollection of two 1976 events or from an investigation of their records." On the basis of Robin's oral testimony and Mehtarian's affidavit, this Court concludes that Robin and Mehtarian did discuss with Fujiyama Pacific Auto's past unsuccessful efforts to gain entry to the Honolulu Airport and their desire to obtain a concession at that airport. As these matters are directly related to Pacific Auto's suit against Budget, the Fujiyama firm is prohibited from representing Budget in that lawsuit.

■ The Fujiyama firm also argues that disqualification is unnecessary because the firm never represented Pacific Auto in litigation and because some of the information Pacific Auto claims to have conveyed to Fujiyama was a matter of public record. This Court cannot conclude that disqualification is inappropriate simply because Fujiyama's representation of Pacific Auto did not involve litigation. As to the confidential nature of the information imparted by Pacific Auto, cases dealing with disqualification have consistently stated that the fact that information provided by the former client could have been obtained through discovery or through inspecting public records is not a sufficient ground for denying a motion for disqualification. *See, e. g., NCK Organization, Ltd. v. Bregman,* 542 F.2d 128, 133 (2 Cir. 1976); *Emle Industries, Inc.*

*v. Patentex, Inc.,* 478 F.2d 562, 572–573 (2 Cir. 1975).

The Fujiyama firm's briefs also emphasize that the firm never reached a fee agreement with Pacific Auto and never billed Pacific Auto for any legal services. In fact, the evidence before this Court suggests that no services were ever performed. Fujiyama states in his affidavit that he did not even review the file of written materials received from Pacific Auto. Although there certainly was very limited contact between the Fujiyama firm and Pacific Auto, the evidence shows that the Fujiyama firm agreed to represent Pacific Auto in its efforts to obtain a car rental concession at the Honolulu Airport and received confidential information from Pacific Auto. Therefore, the Fujiyama firm must be disqualified.

### Plaintiff's Motion to Disqualify the Phillips Nizer Firm

Plaintiff's motion to disqualify the Phillips Nizer firm presents a more difficult issue. Plaintiff contends that disqualification is necessary because attorneys from the Fujiyama firm, in dealing with Phillips Nizer as co-counsel, may have consciously or unconsciously disclosed certain confidential information obtained from Pacific Auto. Plaintiff in effect is asking the Court to presume that the confidential information obtained by Fujiyama was conveyed to Phillips Nizer. Furthermore, plaintiff argues that disqualification is necessary because Phillips Nizer's association as co-counsel with a firm that must be disqualified created an appearance of professional impropriety, in contravention of Canon 9 of the ABA Code of Professional Responsibility.

■ The parties have cited several cases dealing with the issue of disqualification of co-counsel. The cases state that disqualification of one firm does not automatically compel disqualification of the firm's co-counsel. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 235 (2 Cir. 1977); *Akerly v. Red Barn System, Inc.,* 551

F.2d 539, 543 (3 Cir. 1977). Rather, the particular facts of each case must be considered in order to determine whether disqualification is warranted. The cases cited by the parties are all distinguishable from the case at bar. Although they provide insight into the factors courts have considered in ruling on motions to disqualify co-counsel, none of the cases presents a fact situation sufficiently similar to the instant case to provide direct guidance with respect to the motion to disqualify the Phillips Nizer firm.

In this case, the disqualified firm's interaction with the former client was extremely limited. Although the contact was not so insignificant that the Fujiyama firm should be permitted to represent Pacific Auto's adversary on a related matter, the limited nature of the relationship between Fujiyama and Pacific Auto does affect this Court's ruling on the motion to disqualify Phillips Nizer. The evidence presented to this Court establishes that Robin and Mehtarian met with Fujiyama for only 1 to 1½ hours. It appears that Fujiyama never did any further work on behalf of Pacific Auto, particularly since Fujiyama declared in his affidavit that he did not even review the materials in the file received from Pacific Auto. Fujiyama never reported to Mehtarian or Robin that he made any progress in obtaining an on-airport concession, and Pacific Auto was never billed for his services.

Furthermore, there is no evidence whatsoever that any member of the Fujiyama firm conveyed any confidential information concerning Pacific Auto to Phillips Nizer. Robert Salman, the Phillips Nizer attorney who has assumed primary responsibility for the Hawaii action, states in his affidavit that Fujiyama told him in July 1978 that Fujiyama had once been visited by Mehtarian on a matter unrelated to the Hawaii action, but that nothing had come of the meeting in the way of legal representation. Salman's affidavit also states that after Pacific Auto's attorneys brought the disqualification issue to Salman's attention, he contacted the Fujiyama firm and was told that Fujiyama did not remember Mehtarian ever mentioning Budget or the Honolulu Airport, although he did recall Pacific Auto's interest in obtaining a concession at the Hilo Airport.

Salman declares that to the best of his knowledge no confidential information concerning Pacific Auto has ever been revealed to members of the Phillips Nizer firm. Clearly, it would be very difficult for Phillips Nizer to produce affirmative proof that they had not received such information. The record certainly does not suggest that Phillips Nizer associated the Fujiyama firm as co-counsel because of the firm's prior relationship with Pacific Auto. Rather, Salman's affidavit indicates that Phillips Nizer had no reason to believe that the Fujiyama firm's representation of Budget would create a conflict of interest.

If this Court were to impute the knowledge of Fujiyama to co-counsel, the Court would be very close to adopting a rule of automatic disqualification of co-counsel. Such a rule would not accord sufficient weight to factors counseling against disqualification. Although courts must preserve the high standards of the legal profession, courts should also consider the client's right to choose his counsel and the harm to the client caused by an order of disqualification. The Court of Appeals for the Second Circuit recently stressed this consideration:[5]

"A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation.

5. Recognizing the adverse effects of disqualification orders, the Court of Appeals for the Second Circuit concluded in *Board of Education v. Nyquist*, 590 F.2d 1241 (2 Cir., 1979), that "[w]eighing the needs of efficient judicial administration against the potential advantage of immediate preventive measures, * * * unless an attorney's conduct tends to 'taint the underlying trial,' * * * courts should be quite hesitant to disqualify an attorney." 590 F.2d at 1246. The court noted that disqualification has only been considered necessary in cases involving violations of Canons 4, 5 and 9 of the ABA Code.

The client moreover may lose the benefit of its longtime counsel's specialized knowledge of its operations." *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2 Cir. 1978).

Furthermore, it seems that motions for disqualification are often used for strategic purposes. *See Allegaert v. Perot,* 565 F.2d 246, 251 (2 Cir. 1977). These considerations weigh against adoption of a rigid rule governing disqualification of co-counsel. The Court of Appeals for the Third Circuit reached a similar conclusion in *Akerly v. Red Barn System, Inc., supra,* 551 F.2d at 543:

"This Court is urged to adopt a *per se* rule that if one co-counsel is disqualified for ethical reasons, all co-counsel must be barred from representation. We decline to follow such a path. Instead, we adhere to the mode of analysis employed in earlier attorney disqualification controversies—a careful sifting of all of the facts and circumstances." (Footnote omitted.)

In *Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* 567 F.2d 225, the only case cited by plaintiff in which co-counsel was disqualified, the court relied heavily upon the unusual factual circumstances of the case. The disqualification issue arose in *Fund of Funds* because Morgan, Lewis and Bockius ("Morgan Lewis"), a firm that had served as Arthur Andersen's regional counsel for fifteen years, accepted a retainer from Fund of Funds, knowing that it might lead to litigation against Andersen, in addition to other defendants. Although aware of the ethical problems this situation presented, Morgan Lewis continued to represent Fund of Funds, but asked Robert Meister of Milgrim, Thomajan & Jacobs to assist in the matter. Meister's law firm had maintained a close working relationship with Morgan Lewis for some time. Eventually, Fund of Funds brought a separate action against Andersen, with Meister's firm serving as counsel. Meister reviewed documents concerning Andersen that were supplied by Morgan Lewis, reviewed and revised the complaint with a Morgan Lewis

attorney, and in various other respects worked in conjunction with Morgan Lewis. The Court of Appeals for the Second Circuit found that Meister was "the extension of Morgan Lewis's continuing involvement in the underlying action." 567 F.2d at 234. Significantly, the court emphasized that "Meister accepted the retainer from Orr to sue Andersen knowing of the Morgan firm's ethical dilemma. Indeed, his retention as counsel was premised on and resulted from the Morgan firm's incapacity to pursue the claim itself." *Ibid.* (footnote omitted). The court acknowledged the "generally stated rule that a 'co-counsel' relationship will not alone warrant disqualification", but concluded that "the extraordinary, *sui generis* facts" of the case compelled disqualification of Meister's law firm. 567 F.2d at 235.

The facts of this case differ significantly from those presented in *Fund of Funds.* The Fujiyama firm's relationship with Pacific Auto was far more limited than Morgan Lewis's relationship with Arthur Andersen. The entire interaction between the Fujiyama firm and Pacific Auto consisted of two brief meetings, as compared to Morgan Lewis's representation of Andersen for fifteen years. Furthermore, the connection between the Fujiyama firm and Phillips Nizer is considerably more attenuated than the relationship that existed between Morgan Lewis and Meister's firm. Phillips Nizer had never worked with the Fujiyama firm prior to this case, nor did Phillips Nizer receive any documents concerning Pacific Auto from the Fujiyama firm. A final distinguishing factor is that when Phillips Nizer associated the Fujiyama firm as co-counsel, Phillips Nizer apparently had no knowledge of the conflict of interest created by the Fujiyama firm representing Budget.

In *Fund of Funds,* the court based its decision in part upon two earlier Second Circuit cases, *NCK Organization Ltd. v. Bregman,* 542 F.2d 128 (2 Cir. 1976), and *Hull v. Celanese Corp.,* 513 F.2d 568 (2 Cir. 1975). Although plaintiff has not relied upon these cases, the Court notes that some of the language in the decisions lends sup-

port to plaintiff's position. In *Hull* the court of appeals affirmed an order disqualifying a law firm from representing a woman who wished to intervene as a plaintiff in a sex discrimination suit against her employer. The woman was a member of the employer's corporate legal staff. As an attorney, she had been active in the defense of the sex discrimination suit. The district court found that there was some evidence that this plaintiff-attorney might have transmitted confidential information concerning the case to the law firm she had retained as counsel. Due to the on-going possibility of improper disclosure, the district court granted the motion for disqualification of the firm. The Court of Appeals for the Second Circuit affirmed, noting that the district court's order must be upheld absent an abuse of discretion. 513 F.2d at 571. Responding to the disqualified firm's argument that no confidential information had ever been disclosed, the court stated that "[t]he breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of the Code." 513 F.2d at 572. The court went on to emphasize that its decision rested on the unusual factual circumstances of the case:

> "The novel factual situation presented here dictates a narrow reading of this opinion. * * * The scope of this opinion must, of necessity, be confined to the facts presented and not read as a broadbrush approach to disqualification." 513 F.2d at 572.

In *Hull* the plaintiff-attorney possessed confidential information concerning the opposing party's strategy in that particular case. Furthermore, unlike the case at bar, where once the Fujiyama firm is disqualified there would be no further consultation between the Fujiyama firm and Phillips Nizer, in *Hull,* as the district court noted, there would have been an ongoing risk of improper disclosure. Confined to the factual circumstances presented in that case, *Hull* does not support disqualification of Phillips Nizer. Yet the court's statement that a breach of confidence could be presumed is troublesome.

This presumption was later used in *NCK Organization Ltd. v. Bregman, supra,* 542 F.2d 128, as a basis for affirming the district court's disqualification of co-counsel. In a suit brought by a corporation against a former corporate officer, the defendant, Mr. Bregman, had retained Mr. Randall, an attorney who had formerly served as house counsel for the plaintiff corporation and had been actively involved in the transactions underlying the litigation. Randall was disqualified not only because of the conflict of interest created by representing Bregman but also because he might well have been called to testify at trial. 542 F.2d at 131. The Weil firm, which had served as co-counsel, was also disqualified. That firm had accepted employment knowing that Randall had served as house counsel to the corporation, yet accepting Randall's assurances that no impropriety was involved, since, according to Randall, any confidential information Randall possessed was information to which Bregman as a corporate officer was also privy. 542 F.2d at 131. The court of appeals noted that even if this were true, Randall would not be entitled to disclose those confidences. 542 F.2d at 133.

The court of appeals relied heavily on the *Hull* decision in affirming the district court's order disqualifying the Weil firm. The court presumed that Randall had received confidential information from the corporation and concluded that the possibility that such information might be conveyed to the Weil firm was an adequate ground for disqualifying that firm. Although the court recognized that *Hull* differed from the case before it, since "in *Hull* there was a potential for continuing disclosure," the court concluded that "where some evidence exists of the possibility that disclosures were made in the past of which the Weil firm cannot dispossess itself, the same policies which required disqualification in *Hull* require it here." 542 F.2d at 134 (footnote omitted).

Judge Mansfield, concurring in the result, emphasized the importance of reading the majority opinion narrowly, in light of the

particular facts of the case. As he viewed the case, "[t]he question is whether a new counsel is to be automatically disqualified from representing Bregman because the new counsel talked with a disqualified lawyer (Randall)." 542 F.2d at 135–136. Judge Mansfield acknowledged that under Second Circuit decisions it could be presumed that Randall had received confidential information during the course of his attorney-client relationship with the corporation, yet he stressed that the Weil firm had never been in an attorney-client relationship with the corporation and thus could not be presumed to have received confidential information directly from the corporation. Judge Mansfield criticized the majority's willingness to presume that the disqualified firm had disclosed confidential information to co-counsel:

> "I concur in the result only because it is undisputed that Randall, who was clearly disqualified, had engaged in fairly extensive discussion of the case with the Weil firm, giving advice to that firm and to Bregman. Under the circumstances, I cannot say that it was an abuse of discretion for Judge Motley to have exercised the district court's supervisory power to disqualify the Weil firm. However, I would not subscribe to an iron-clad rule automatically presuming that a disqualified lawyer has disclosed confidences to a firm which was not in an attorney-client relationship with the other side. While an automatic taint may be a salutary method of enforcing ethical principles against an attorney who personally acted in a fiduciary capacity for an adversary, it smacks of an overkill to extend such a taint to a new counsel brought in by him to represent someone else." 542 F.2d at 136.

■ This Court is unwilling to disqualify the Phillips Nizer firm solely on the basis of a presumption that the Fujiyama firm breached their obligation not to disclose any confidential information obtained from Pacific Auto. Moreover, there appears to be no California or Ninth Circuit authority establishing such a presumption. Neither the California Rules of Professional Conduct nor the ABA Code specifically address the issue of disqualification of co-counsel, and there are no California or Ninth Circuit cases directly on point. Yet the Court finds some support for its reluctance to presume disclosure of confidential information between co-counsel in a California case dealing with attorneys of co-defendants, *In the Matter of Charles Willie L.,* 63 Cal.App.3d 760, 132 Cal.Rptr. 840 (1976). In ruling on a disqualification motion, the court considered as a preliminary matter whether an attorney who had represented a defendant in a criminal case might have thereby obtained confidential information concerning a co-defendant. The court refused to assume that the attorney had received confidences from the co-defendant, since they had not been in an attorney-client relationship. As to the possibility that confidential information might have been disclosed when the attorneys for the two defendants consulted during the course of the trial, the court looked to the record to determine whether there was any evidence of such disclosure. As the record gave no indication that confidential information had been conveyed, but rather suggested that the attorneys had merely conferred concerning trial tactics and strategy, the court found no basis for assuming that the duty to preserve a client's confidences had been breached.

■ On the basis of the evidence pertaining to the motion to disqualify the Phillips Nizer firm, this Court concludes that Phillips Nizer could only be disqualified if the knowledge of the members of the Fujiyama firm could be presumed to have been transmitted to the members of the Phillips Nizer firm. Although the knowledge of one attorney in a firm is generally imputed to other members of the firm, so that the disqualification of one attorney results in disqualification of the entire firm,[6] in some

---

6. *See, e. g.,* Disciplinary Rule 5–105(D) of the ABA Code:

"If a lawyer is required to decline employment or to withdraw from employment under

cases the party opposing disqualification has shown that imputing the knowledge of one attorney to all other attorneys in the firm would be inappropriate under the circumstances, and the courts have therefore held that disqualification on the ground of imputed knowledge would be unwarranted. *See, e. g., Gas-a-Tron v. Union Oil Co.,* 534 F.2d 1322 (9 Cir. 1976), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2 Cir. 1975).[7] If a presumption of disclosure had arisen here, this Court would find that it had been adequately rebutted. As the court noted in *Silver Chrysler, supra,*

> " 'It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet.' " 518 F.2d at 754, *quoting Laskey Bros. of West Va., Inc. v. Warner Bros. Pictures,* 224 F.2d 824, 827 (2 Cir. 1955).

Yet, absent controlling authority on the issue, this Court declines to hold that such a presumption with respect to co-counsel is appropriate. Although creating such a presumption would make decisions regarding disqualification of co-counsel far simpler, it should also be borne in mind that disqualification entails considerable expense and perhaps substantial prejudice to the client whose attorney is disqualified. Furthermore, imputation of the knowledge of one member of a law firm to other members of the firm does not presume any breach of ethical obligations, for under the ABA Code, Ethical Consideration 4–2, "[u]nless the client otherwise directs, a lawyer may disclose the affairs of his client to partners or associates of his firm" without violating the duty of preserving his client's confidences. However, to presume that an attorney would reveal confidential information regarding one client to co-counsel on a matter relating to another client would be to presume a breach of the ethical obligation of confidentiality. In a case somewhat similar to the case at bar, the Court of Appeals for the Fifth Circuit reversed an order of disqualification of co-counsel that was based upon the trial court's imputing the knowledge of one member of a firm to another member of the firm and then further imputing that knowledge to co-counsel. The court of appeals rejected this double imputation, noting that it "could lead to extreme results in no way required to maintain public confidence in the bar," and would result "in wasted time and unnecessary expense." *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5 Cir. 1971). The court distinguished the relationship among law partners from the relationship between co-counsel:

> "These firms acted as co-counsel, each responsible to and compensated by American Can, not the other. Consequently knowledge admittedly imputed to Allison should not then be re-imputed to Miller. Disqualification of Miller and the Covington firm must fail on this ground." *Ibid.* (citations omitted).

---

a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."

**7.** In these cases the Courts of Appeals for the Ninth Circuit and the Second Circuit refused to apply inflexibly the general rule that the knowledge of one member of a firm is imputed to other members of the firm. The Court of Appeals for the Seventh Circuit, however, seems to favor a less flexible approach. In *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc. et al., supra,* the Court of Appeals for the Seventh Circuit addressed the issue of whether imputation of knowledge to other attorneys in the firm should operate as an irrebuttable presumption. The court's resolution of this issue was not entirely clear. The court stated that Canon 9 supported its decision to disqualify plaintiff's law firm, despite the argument that the attorneys in that firm only had imputed rather than actual knowledge of confidential information. The dissenting opinion concluded that the majority's decision "must rest entirely on a holding that the presumption of shared confidences [among members of a firm] is irrebuttable." The majority opinion might also be read as finding that even if the presumption should be deemed rebuttable, it had not been adequately rebutted in that case.

Although the court in *American Can* did not consider whether disqualification of co-counsel would have been appropriate if the knowledge of the member of the first firm had been actual rather than imputed,[8] the tenor of the court's opinion suggests that the Court of Appeals for the Fifth Circuit would find a presumption of revelation of confidences to co-counsel unwarranted.[9]

 Plaintiff argues that even if this Court will neither presume that Fujiyama disclosed confidences to Phillips Nizer nor find that the record suggests that such disclosure took place, the Court nevertheless should disqualify the Phillips Nizer firm on the ground that their association with the Fujiyama firm created "the appearance, if not the actuality, of impropriety." Plaintiff relies on Canon 9 of the ABA Code, "A lawyer should avoid even the appearance of professional impropriety." The Ethical Considerations under Canon 9 reveal that this canon is based in large part upon the need to maintain public confidence in the legal system and the legal profession. Although the California Rules of Professional Conduct do not explicitly incorporate the standard of Canon 9, California cases dealing with disqualification of attorneys have noted the importance of avoiding the ap-

pearance of impropriety. *See, e. g., People v. Municipal Court,* 69 Cal.App.3d 714, 720, 138 Cal.Rptr. 235, 238 (1977).

Plaintiffs rely upon the Court of Appeals for the Seventh Circuit's statement that "[r]ead together, [Canons 4 and 9] indicate that an attorney *may* be required to withdraw from a case where there exists even an appearance of a conflict of interest." *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706, 709 (7 Cir. 1976). This statement supports the view that this Court would not have exceeded the bounds of its permissible discretion if it were to disqualify the Phillips Nizer firm, yet it does not compel disqualification here.

Having concluded that there is no evidence of actual impropriety on the part of the Phillips Nizer firm, this Court will not disqualify the firm solely on the ground that their role as co-counsel to a disqualified firm created an appearance of impropriety, particularly in light of the general rule that co-counsel are not to be disqualified automatically. In this Court's opinion, disqualification of the Phillips Nizer firm under the circumstances presented in this case would reflect an overabundance of caution.[10]

---

8. In fact, the court expressly reserved this question:
 "[W]e do not determine whether disqualification of Miller and the Covington firm would have been correct if Allison had actual knowledge of information communicated to Ericksen, and substantially related to the American Can controversy." 436 F.2d at 1130.

9. Disqualification based upon a presumption of disclosure was again considered in *George v. LeBlanc,* 78 F.R.D. 281 (N.D.Tex.1977). In that case, defendants moved to disqualify plaintiffs' attorneys because of certain discussions the attorneys had had with former counsel for one of the defendant corporations. Although plaintiffs' attorneys had never represented the corporation, defendants asked the court to presume that plaintiffs' attorneys had received confidential information concerning the corporation from the corporation's attorneys. The court counseled against extension of the presumption of receipt of confidential information and refused to apply such a presumption in the case before it:
 "[I]mposing a presumption of passing confidential [information] to every such exchange

between attorneys serves no compelling purpose. A limit must be set on the class to whom courts will impute such knowledge absent proof of actual receipt. Presently, the courts have included within the suspect class, and have disqualified, attorneys who have switched sides either to become counsel or to become parties themselves against former clients. This disqualification generally extends to partners and employees of the lawyer who participated in the attorney-client privilege. *American Can Company v. Citrus Feed Company,* 436 F.2d 1125, 1129 (5th Cir. 1971)." 78 F.R.D. at 287-288.
 The Court of Appeals for the Fifth Circuit affirmed without an opinion. *George v. LeBlanc,* 565 F.2d 1213 (5 Cir. 1977).

10. This Court is reluctant to adopt plaintiff's broad reading of Canon 9, not only because of the harm to clients caused by disqualification of attorneys based upon a possible appearance of impropriety, but also because such an expansive application of Canon 9 would do little to further public confidence in the legal system. Indeed, as the Court of Appeals for the Fifth Circuit stated in *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5 Cir. 1976):

### Costs and Attorneys' Fees

 Pacific Auto requests an award of costs and attorneys' fees incurred in moving for disqualification of the Fujiyama firm and the Phillips Nizer firm. Phillips Nizer, on behalf of Budget, requests an award of costs and attorneys' fees incurred in opposing the motion to disqualify the Phillips Nizer firm. Neither party has provided any authority supporting the request for attorneys' fees or supporting an award of costs at this stage of the litigation. Accordingly, the requests for costs and attorneys' fees will be denied. This does not, of course, preclude including these costs in the costs awarded to the party who ultimately prevails in this litigation. *See* Federal Rules of Civil Procedure 54(d).

### Motion for Protective Order and to Quash Subpoena

In connection with plaintiff's motion for disqualification, the Fujiyama firm sought to depose plaintiff's attorneys and served a subpoena *duces tecum* upon the attorneys calling for the production of documents related to the disqualification motion, particularly certain affidavits drafted by plaintiff's attorneys. The deposition and document production were noticed for February 10, 1979. On February 12, 1979, plaintiff filed a motion seeking a protective order and an order quashing the subpoena *duces tecum* and the notice of deposition, arguing in a conclusory fashion that defendant had employed the subpoena and notice for purposes of delay and in an effort to circumvent discovery rules. Plaintiff sought an award of costs and attorneys' fees incurred in bringing the motion. Defendant opposed the motion, contending that the subpoena and notice were proper, and asked that the hearing on the motion for disqualification be continued in order to enable defendant to take the depositions of plaintiff's attorneys.

 The hearing on the motion for disqualification was held as previously scheduled on February 15, 1979. At that hearing, plaintiff's attorneys did not seek a ruling on their motion for a protective order and to quash the subpoena. It seems that at that date the motion had already become moot. Clearly it is moot at this point, for defendant's discovery efforts related solely to the motion for disqualification. Plaintiff's motion is therefore denied as moot. Plaintiff's request for costs and attorneys' fees incurred in bringing the motion is also denied.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to disqualify the law firm of Fujiyama, Duffy, Fujiyama & Koshiba from representing Budget Rent A Car Systems, Inc., in *Pacific Auto Rental Corp. v. The Hertz Corp., et al.,* No. C–78–2698–CBR, is granted, and plaintiff's motion to disqualify the law firm of Phillips, Nizer, Benjamin, Krim & Ballon from representing Budget Rent A Car Systems, Inc. in that action is denied.

IT IS HEREBY FURTHER ORDERED that plaintiff's and defendant's requests for awards of costs and attorneys' fees incurred in connection with the motions for disqualification are denied.

IT IS HEREBY FURTHER ORDERED that plaintiff's motion for a protective order and to quash a subpoena is denied as moot, and that plaintiff shall not be awarded costs and attorneys' fees incurred in bringing that motion.

---

"[T]he more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary. An overly broad application of Canon 9, then, would ultimately be self-defeating."