INTERSTATE PROPERTIES, Plaintiff,

v.

PYRAMID COMPANY OF UTICA, Robert J. Congel, Leonard Leveen, James McDonald, Joseph Scuderi, Gerald Dick, Woodchuck Hill Associates and Teachers Insurance & Annuity Association, Defendants.

No. 81–Civ. 1874(RLC).

United States District Court,
S. D. New York.

Sept. 22, 1982.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiff, Alan M. Gelb, Jerome Kowalski, Frederick S. Gold, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, Bond, Schoeneck & King, Syracuse, N. Y., Jay W. Wertheimer, P. C., New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Certain defendants[1] move pursuant to Canons 4, 5, and 9 of the American Bar Association's Code of Professional Responsibility ("canons") to disqualify the firm of Finley, Kumble, Wagner, Heine, Underberg & Casey ("Finley, Kumble") from further representation of plaintiff, Interstate Properties ("Interstate"), in this litigation. The underlying lawsuit concerns the development of a shopping mall in upstate New York. Interstate and defendant Pyramid Company of Utica ("Pyramid-Utica") are joint venturers in this development. Interstate contends that Pyramid-Utica, which has the responsibility for arranging the construction financing and permanent mortgage for the development, has violated the terms of the joint venture agreement in making those arrangements.

An understanding of the events preceding the creation of the joint venture agreement and the early stages of its execution are necessary to determine this motion. Pyramid-Utica and Interstate in the mid-1970's each owned adjacent parcels of property in the vicinity of Utica, New York that each hoped to develop into a shopping mall. Interstate also owned a thriving shopping center which would have faced competition from the proposed newcomer. Pyramid-Utica first came into conflict with Interstate when the latter, represented by Finley, Kumble, submitted information to the New York State Department of Environmental Conservation ("DEC") in opposition to Pyramid-Utica's application for a permit to develop its mall. That permit was denied to Pyramid-Utica.

Subsequently the two parties formed a joint venture to develop a single shopping center on their combined properties. Among the terms of the joint agreement were the requirements that Pyramid-Utica obtain the permits and financing necessary to proceed with the project. In this regard, Pyramid-Utica retained Finley, Kumble, which had been so effective in opposing Pyramid-Utica's prior DEC permit application to represent the company in its renewed application. Finley, Kumble proved successful again, and the permit was issued.

This representation marked the beginning of a lucrative relationship for Finley, Kumble. Apparently impressed by the firm's competence at the environmental permit hearings, Pyramid-Utica's parent company, The Pyramid Companies ("Pyramid"),[2] employed Finley, Kumble to represent Pyramid Crossgates Company ("Crossgates") in connection with obtaining an environmental permit to construct a

---

1. The movants are Pyramid Company of Utica ("Pyramid-Utica"), and the defendant partners of Pyramid-Utica.

2. The Pyramid group of companies consists of a series of partnerships, each one of which is responsible for a particular development project. Each partnership has the same lead partner, Robert Congel, and at least one other partner, Leonard Leveen is a member of each. All of the partnerships operate from the same office and have daily meetings, by telephonic connection, of all partners of all partnerships. Pyramid itself manages each of the shopping centers that the various partnerships have developed.

The parties dispute the significance of the relationship of the Pyramid companies. Defendants contend that they should be treated as a unified entity while Finley, Kumble insists that each be treated as a discrete enterprise. Resolution of this issue is not essential to decision for the reasons discussed in the text.

mall in the Albany region and to represent another Pyramid client in connection with certain real estate and related environmental matters in Vermont. At the outset Finley, Kumble was compensated on an hourly or per diem basis, but this fee arrangement was renegotiated to place the firm on a monthly retainer. As part of this retainer arrangement, Finley, Kumble agreed to expand the nature of services that it made available to Pyramid and its client from those of environmental counsel to those of general counsel responsible for "real estate/corporate/business matters[.]" Letter from D. Snider, Finley, Kumble, to R. Congel, Pyramid, (Nov. 15, 1979, p. 2).

In early 1980, differences arose between Interstate and Pyramid-Utica concerning the financing arrangements that the latter had made pursuant to the joint venture agreement. These differences matured into this lawsuit which was filed by Interstate with Finley, Kumble acting as counsel, in March, 1981. In May, 1981, Finley, Kumble informed Pyramid that the firm could no longer represent it or its clients in connection with the Utica Mall because of the pending lawsuit. Finley, Kumble, however, continued to represent Crossgates regarding numerous environmentally related obstacles to the Albany project.

Movants contend that Finley, Kumble has breached the canons by failing to preserve the confidences and secrets of a client, by representing interests adverse to a present client, and by creating the appearance of professional impropriety. Finley, Kumble counters that Pyramid and its client companies gave repeated oral, and on one occasion written, waivers of its rights to object to Finley, Kumble's representation of Interstate in opposition to Pyramid entities. In addition, Finley, Kumble asserts that because of the limited and special nature of its representation of Pyramid-Utica no confidences relevant to this litigation could have been communicated to the firm and that because of the structure of the Pyramid entities the firm cannot be seen as suing its own client. Although Finley, Kumble has tread perilously close to the border of the professionally irresponsible,

its actions cannot be found to violate the canons.

The linchpin of Finley, Kumble's exoneration is found in Pyramid's "grant [of] express permission for [Finley, Kumble] to . . . continue to act as general counsel for Interstate in any and all pending and future matters including any adversary proceedings that might arise between Interstate and Pyramid." Letter from N. Underberg, Finley, Kumble, to Pyramid, (February 20, 1980 at 2). The letter containing the waiver which was drafted by Finley, Kumble, clearly reminds Pyramid that it was aware of Finley, Kumble's longstanding representation of Interstate, that Pyramid was "represented by counsel of [its] own choosing in connection with the negotiation, revision, execution and delivery of the [joint venture] Agreement[,] . . . that certain differences have arisen between [Pyramid] and Interstate pursuant to this Agreement and that [Finley, Kumble] has acted as Interstate's attorneys in connection with efforts to resolve those matters." *Id.* at 1. The letter goes on to "acknowledge that there has been no confidential or privileged communications between [Finley, Kumble and Pyramid] which would inhibit [Finley, Kumble's] representation" of Interstate in litigation concerning the joint venture agreement. *Id.* at 2. Finally, the letter cautioned Pyramid that in "reviewing and executing this agreement [i.e., letter of waiver,] that the same be carefully examined by separate counsel of their own choosing, and that you acknowledge that you have not relied upon any advice provided by [Finley, Kumble] but instead have acted solely in reliance upon the advice of independent counsel." *Id.* at 2. The letter was agreed and accepted by Leonard Leveen, a principal of Pyramid-Utica.

Finley, Kumble argues persuasively that its employment by Pyramid-Utica, Crossgates and Pyramid reflects the voluntary and knowing decision of a client to select an attorney. From its initial representation of one of the Pyramid entities, Finley, Kumble maintains, it repeatedly cautioned those companies that its ability to be their counsel

was limited by its position as general counsel to Interstate. Of course, such declarations cannot immunize conduct otherwise inappropriate under the canons, but in the circumstances of Finley, Kumble's relationships with the group of Pyramid companies, the requests for and acknowledgments of waivers of objections to Finley, Kumble's continued representation of Interstate cannot be labeled impermissible. From the outset, Finley, Kumble restricted its representation of Pyramid entities to assure that it would not conflict with Interstate's interests. The firm's initial contact with Pyramid-Utica was limited to environmental matters, the settlement of which would be to the clear benefit of Interstate as well as its joint venturer, Pyramid-Utica. Finley, Kumble's subsequent employment by Pyramid entities was also limited to environmental concerns in projects that did not raise the possibility of conflict with its obligations arising from its position as general counsel to Interstate. When the firm expanded its relationship with the Pyramid group to cover the broad spectrum of commercial affairs, it did so only with the understanding that in order to avoid the possibility of conflict, it would not represent any Pyramid entity in the development of a site which Interstate might seek to develop as a competitor. Pyramid-Utica, Crossgates and Pyramid agreed to these restrictions apparently because the companies considered Finley, Kumble's services sufficiently valuable to warrant its employment even though it could not service all their needs all the time.

Canon 5 permits multiple representation of clients "if it is obvious that [the attorney] can adequately represent the interest of each and if each consents to the representation after full disclosure ..." Model Code of Professional Responsibility DR 5-105 (1979). The court's supervisory role in enforcing this rule thus requires, as a preliminary matter, that the court determine whether an attorney obviously can fulfill his or her duties to each client. Finley, Kumble has circumscribed its relationship with the Pyramid entities to remove the possibility of conflict by first acting only as special environmental counsel to the Pyramid group and then, as it became involved in more general commercial affairs of the group, by limiting its involvement to developments in which Interstate had no potential or actual interest as competitor or partner. Thus restricted, it was and remains obvious that Finley, Kumble's multiple obligations do not require divided loyalties.

The instant motion does not raise a counter-factual instance. Finley, Kumble's aid to Pyramid-Utica in obtaining the DEC permit is immaterial to the substance of this lawsuit. The firm has steered clear of involvement in the financial arrangements for the project, which contained, from the outset, spores of potential conflict between the joint venturers and which, now, have ripened into this litigation. The environmental representation, by contrast, could present no possibility of adversity between the partners because the DEC permit accrued to the benefit of both without cost to either, other than that imposed by the application process. As the papers in this lawsuit reveal, the financial arrangements involved in the development of the mall presented the opportunity of income shifting between Interstate and Pyramid-Utica. Finley, Kumble appropriately avoided involvement with the financial aspects of the venture and its involvement with the environmental proceedings are no less proper because the two partners have come into conflict over other aspects of their endeavor.

The second step of determining whether multiple representation is within the bounds of Canon 5 requires the court to determine whether each client has knowingly consented to the representation. The parties dispute the extent to which Finley, Kumble verbally advised Pyramid-Utica and the other members of the Pyramid organization of the limits of its availability to them and the potential for conflict arising from its representation of Interstate. Nonetheless, the written waiver executed by a Pyramid-Utica general partner resolves any doubt that that company was not fully aware of the latent problems in its retention of Fin-

ley, Kumble and that it desired Finley, Kumble's services even though Interstate had voiced objections to Pyramid-Utica's financing of the mall and that those objections might result in a lawsuit in which Interstate was represented by Finley, Kumble. Pyramid-Utica's contention that it was unaware that the joint venturers were having a serious dispute is not credible when read against the clear words of the waiver. Similarly, the company's claim that its approval was compelled, not voluntary, because Pyramid had already paid a substantial sum as a retainer to Finley, Kumble, is unpersuasive. If Pyramid honestly believed at the time that it received the request for a written waiver, that the waiver was outside the bounds of, and improperly narrowed the scope of, the contract between Finley, Kumble and Pyramid, then Pyramid would have raised some formal objection at that time. The delay of two years to cry overreaching can only be interpreted as a litigation ploy and not as a genuine complaint.

■ The efficacy of the waiver to immunize Finley, Kumble's actions from sanctions under Canon 4 is less established. The Court of Appeals for this circuit, however, has declared that Canon 4 concerns only arise when a prior representation was such that counsel subject to the disqualification motion could possibly have received confidences or secrets. *See Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir. 1977). Of course, once this threshold is surmounted, disqualification is automatic as long as the attorney's employment in question is adverse to the interests of a former client on a matter substantially related to a prior representation of that client. *See Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953) (Weinfeld, J.).

■ The circumstances surrounding Finley, Kumble's relationship with Pyramid-Utica are similar to those found in *Allegaert v. Perot, supra.* Finley, Kumble provided legal counsel to Pyramid-Utica while the latter was acting as the nominal em-

ployer for a joint venture with Finley, Kumble's client of longstanding and for whom Finley, Kumble had just negotiated the joint venture agreement that Pyramid-Utica was carrying out. In *Allegaert,* the Court of Appeals specifically noted that a "law firm['s] continuous and unbroken legal relationship with [its] primary client[ ]" is a crucial determinant in evaluating whether the firm acting as counsel to a partner of its primary client could have been positioned to receive information intended to be withheld from the firm's primary client. 565 F.2d at 250. Pyramid-Utica's reliance on *NCK Organization Ltd. v. Bregman,* 542 F.2d 128 (2d Cir. 1976); *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975) and *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir. 1973) is misplaced because, as the Court of Appeals discussed in *Allegaert,* in those cases the attorneys subject to the disqualification motion each changed sides during litigation or after a long affiliation with the party moving for disqualification. *See* 565 F.2d at 250–51. Here, by contrast, Finley, Kumble has represented Interstate at all times. The firm represented Pyramid-Utica in matters related to the subject of this lawsuit only when Pyramid-Utica was acting as the nominal employer of the firm on behalf of the partnership which included Interstate. Unlike the surprise that accompanies a switch in sides, Pyramid-Utica has always been aware that Finley, Kumble owed its allegiance to Interstate and that the firm would represent Interstate in conflicts with Pyramid-Utica.

Even if the waiver executed by Pyramid is not dispositive of the Canon 4 issue, it does support the conclusion that Finley, Kumble was not in the position during its employment by Pyramid-Utica for the environmental hearings to have received information that was intended to be withheld from Interstate. The waiver explicitly acknowledges that during that period no confidential information was received by Finley, Kumble that would inhibit the firm's representation of Interstate in litigation with Pyramid-Utica over the financing of the new shopping mall. It is incredible that

Pyramid-Utica would execute such a statement under advice of counsel if confidences or secrets had passed between the company and Finley, Kumble. The waiver, thus, can be read to eliminate any possibility, however slight, that confidential information might have been acquired from Pyramid-Utica during its relationship with Finley, Kumble that will now be used to Pyramid-Utica's disadvantage.

Defendants' final proposed ground for disqualification is that general admonition of Canon 9 that "A lawyer should avoid even the appearance of professional impropriety." Canon 9 dictates that doubts should be resolved in favor of disqualification, but the Court of Appeals has cautioned that this rule should not be interpreted to override the balance, created by the other canons, between a client's choice of counsel and maintenance of professional standards. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 757 (2d Cir. 1975); *North American Trading Corp. v. Zale Corp.,* 83 F.R.D. 293, 295 (S.D.N.Y.1979) (Carter, J.). When an attorney has demonstrated that his or her actions are within the bounds of Canons 4 and 5, the mere appearance of impropriety with no showing that the trial will be tainted "is simply too slender a reed on which to rest a disqualification order . . ." *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979); *see International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1295 (2d Cir. 1975); *Yaretsky v. Blum,* 525 F.Supp. 24, 30 (S.D.N.Y.1981) (Motley, J.). Accordingly, disqualification is not warranted under Canon 9.

Finley, Kumble asks for an award of its costs and attorneys' fees in opposing this motion. Although the motion is denied, it is far from a frivolous or improper use of the Code of Professional Responsibility as a litigation tool. The timing of the motion, which comes two years after Pyramid-Utica was alerted of a possible conflict and over one year after commencement of the lawsuit, does suggest that the motion was made for strategic rather than substantive reasons. Nonetheless, defendants have made a credible, if ultimately unpersuasive, showing that Finley, Kumble trenched upon the limits of the canons' prescriptions. Finley, Kumble's zeal in its pursuit of expanding its roster of clients brought it close to, although not quite beyond, the limits of permissible conduct. In this situation, defendants were well advised to challenge the firm's continued representation of plaintiffs.

For the reasons discussed, the motion for disqualification is denied and no costs or fees are awarded.

IT IS SO ORDERED.