**TRINITY AMBULANCE SERVICE, INC. and Aetna Ambulance Service, Inc.**

v.

**G & L AMBULANCE SERVICES, INC., the City of Hartford, L & M Ambulance Corp., and Professional Ambulance Service, Inc.**

Civ. No. H 82–969.

United States District Court, D. Connecticut.

Jan. 23, 1984.

Eliot B. Gersten, Alan W. Koerner, Gersten & Gersten, Hartford, Conn., for plaintiff Trinity Ambulance Service, Inc.

Sidney T. Schulman, Hartford, Conn., for plaintiff Aetna Ambulance Service, Inc.

Morton W. Appleton, Bromberg & Appleton, Hartford, Conn., for defendant Professional Ambulance Service, Inc.

Dennis L. Pieragostini, Office of Corp. Counsel and Theodore Tucci, Robinson, Robinson & Cole, Hartford, Conn., for defendant City of Hartford.

## RULING ON MOTIONS TO DISQUALIFY COUNSEL

JOSÉ A. CABRANES, District Judge:

This is an action challenging the method by which the City of Hartford directs requests for emergency ambulance services to private companies. Plaintiffs contend that the designation of two private firms as

"sole providers" of emergency ambulance services within the city violates federal and state antitrust laws.

Plaintiff Trinity Ambulance Service, Inc. ("Trinity") has filed a motion, supported by plaintiff Aetna Ambulance Service, Inc. ("Aetna"), requesting that counsel for Professional Ambulance Service, Inc. ("Professional"), initially a plaintiff and now a party defendant in this action, be disqualified. Trinity's disqualification motion is premised on the contention that Professional's counsel was privy to confidences and secrets of Trinity during the period, prior to realignment of the parties, when Aetna, Trinity and Professional were all plaintiffs in two consolidated actions challenging the city's policy. Professional has responded with a motion to disqualify Trinity's counsel. Professional asserts that its relationship to Trinity's counsel is a "mirror image" of the relationship of Professional's counsel to Trinity, hence if Professional's counsel is to be disqualified, then Trinity's counsel must be disqualified as well.

At a hearing held December 5, 1983, a number of facts relevant to the pending disqualification motions were established. Eliot Gersten, Trinity's counsel, stated that he had had conversations with Harvey Kagan, a principal and officer of Professional, see Certified Official Transcript of Hearing Held December 5, 1983 (filed Dec. 20, 1983) ("Tr.") at 5–6, and Morton Appleton, Professional's counsel, stated that he had talked directly with principals of Aetna, and possibly with those of Trinity as well, id. at 14–15; see id. at 6, 23. The parties jointly retained an expert witness to assist in the prosecution of their antitrust claims, and they are each in possession of a copy of his report. Id. at 7–8, 19. Aetna, Trinity and Professional also had an informal agreement whereby other costs of litigation, including transcripts, subpoenas, photocopying and sheriff's fees, were shared. Id. at 7–8, 12, 19. Sometimes these costs were paid on a rotating basis by one or another of the parties, see id. at 8, and sometimes bills were sent from Gersten's office to Aetna and Professional requesting reimbursement for their share of expenses incurred, see id. at 12. Fees for legal work were paid only by each party to its counsel of record. Id. at 11–12, 21. Business records and other potentially confidential documents, other than those produced in the course of discovery, were not exchanged between the parties to these motions. Id. at 9–10, 19–20. However, the work product of the attorneys was circulated. Id. at 12, 18–19, 21. Finally, Gersten and Appleton stated that they each had "open access" to litigation files of the other and that Appleton had worked on the case for some period of time out of Gersten's offices. Id. at 12–13, 15–16.

## I.

Thirty years ago, Judge Weinfeld enunciated the general test for deciding disqualification motions involving the successive representation of adverse parties by a single attorney, the situation most closely analogous to the one presented here. In *T.C. Theatre Corp. v. Warner Brothers Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953), the defendant, a motion picture distributor, moved to disqualify counsel for the plaintiff, a theatre operator, because the attorney had previously represented the defendant in an antitrust action instituted by the United States arising out of the same alleged conspiracy to restrain trade in the motion picture exhibition industry that formed the basis of the plaintiff's complaint. In order to have the attorney disqualified, Judge Weinfeld held,

the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are *substantially related* to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature or extent.

*Id.* at 268 (emphasis in original).[1] Disqualification in such circumstances functions to "prevent a lawyer from [consciously or] unconsciously using or manipulating a confidence acquired in [an] earlier representation and then transforming it into a telling advantage...." *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973); *see* Model Code of Professional Responsibility, Canon 4 (1980) (requiring "preserv[ation of] the confidences and secrets of a client");[2] Model Rules of Professional Conduct, Rule 1.9 (1983) (restating the substantial relationship test).[3]

This case does not involve successive representation of adverse parties in the ordinary sense, because the adversity of interests arose during the pendency of a single litigation and because the attorneys who are targets of the disqualification motions continue to represent the same clients. Unlike the typical situation giving rise to a disqualification motion of this sort, it is a client, not an attorney, who has "changed sides." *See Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir.1977); *Interstate Properties v. Pyramid Co.,* 547 F.Supp. 178, 182 (S.D.N.Y.1982). The question arises whether the concern for preserving confidences and secrets which underlay *T.C. Theatre Corp.* and its progeny mandates application of the substantial relationship test to the largely distinguishable facts of this case.

## II.

Recent decisions of our Court of Appeals have indicated that disqualification under Canon 4 is justified only when necessary "to preserve the integrity of the adversary process" and to eliminate the possibility that use of confidential information will "disturb[ ] the balance of the presentations" and thereby "taint the underlying trial," *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); *see, e.g., Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir.1981) (Newman, J.) ("disqualification ... should ordinarily only be granted when a violation of the Code of Professional Responsibility poses a significant risk of trial taint"); *Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980) (*en banc*), *vacated on other grounds and remanded,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *W.T. Grant Co. v. Haines,* 531 F.2d 671, 678 (2d Cir.1976).[4] The unwillingness to disqualify attorneys solely on the basis of Canon 9 of the Code of Professional Responsibility, which instructs lawyers to avoid "even the appearance of professional impropriety,"[5] is grounded on a recognition of the "immediate adverse effect [of disqualification] on the client by separating him from counsel of his choice," *Board of Education v. Nyquist, supra,* 590 F.2d at 1246; *see Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–740 (2d Cir.1978). Disqualification of attorneys during the course of litigation may also exacerbate the existing perception that judicial procedures are slow and overly dependent on technicalities.[6] Moreover, courts have recognized

---

**1.** Judge Weinfeld's "substantial relationship" test is still employed in this circuit. *See, e.g., NCK Organization Ltd. v. Bregman,* 542 F.2d 128, 132 (2d Cir.1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754–757 (2d Cir.1975); *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir. 1975).

**2.** Canon 4 provides:
A lawyer should preserve the confidences and secrets of a client.

**3.** Rule 1.9 provides:
A lawyer who has formerly represented a client in a matter shall not thereafter:
    (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
    (b) use information relating to the representation to the disadvantage of the former client....

**4.** *See also* Lindgren, *Toward a New Standard for Attorney Disqualification,* 1982 Am.B.Found. Research J. 421, 442.

**5.** Canon 9 provides:
A lawyer should avoid even the appearance of professional impropriety.

**6.** To the extent that disqualification thus increases public disillusionment with the judicial system, it contributes to the erosion of the legiti-

that disqualification motions "are often interposed for tactical reasons" and inevitably result in delay. *Board of Education v. Nyquist, supra,* 590 F.2d at 1246.[7] Accordingly, "[a]lthough Canon 9 dictates that doubts should be resolved in favor of disqualification, it is not intended completely to override the delicate balance created under Canon 4 and the decisions thereunder." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra,* 518 F.2d at 757 (citation omitted).[8]

### III.

Turning to the applicability of the substantial relationship test of *T.C. Theatre Corp.* to these motions, the court must determine, as a threshold matter, whether an attorney-client relationship existed between Professional's counsel and Trinity and between Trinity's counsel and Professional. As a general proposition, it is well-established that "[t]he duty to preserve confidences and secrets only attaches when an attorney-client relationship exists...." *Premium Products Sales Corp. v. Chipwich, Inc.,* 539 F.Supp. 427, 433 (S.D.N.Y. 1982); *see also In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir.), *reh'g denied,* 536 F.2d 1025 (1976); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971).

In *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978), the Court of Appeals outlined a subjective approach to determining the existence of an attorney-client relationship for purposes of disqualification motions. *Id.* at 1319–1320; *see* Liebman, *The Changing Law of Disqualification: The Role of Presumption and Policy,* 73 Nw.U.L.Rev. 996, 1031–1043 (1979). "Under this approach, the court looks to the nature of the work performed and to the

circumstances under which the confidences were divulged." *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1321–1322 (1981). An attorney-client relationship is said to exist when the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice. *Id.* at 1322, *citing* C. McCormick, *Law of Evidence* § 88, at 179 (E. Cleary 2d ed.1972).

■ Professional does not dispute that its counsel was "involved with the planning, strategy, research and development" of Trinity's case while the two were co-plaintiffs, and that it is "totally familiar" with what, in Trinity's view, are the weaknesses of the plaintiffs' case. *See* Trinity's Motion to Add a Party Defendant and Application to Disqualify Counsel (filed Nov. 16, 1983) at 2. Indeed, it is this very involvement and familiarity upon which Professional bases its cross motion to disqualify Trinity's counsel. *See* Professional's Motion to Disqualify Counsel (filed Dec. 5, 1983) at 3. Professional and Trinity made wide-ranging disclosures to each other's attorneys while they were co-plaintiffs in the belief that the information divulged would be used in the prosecution of their common antitrust claims. Tr. 11. Neither Professional nor Trinity maintains that the subsequent realignment of the parties which placed them on opposing sides of this litigation, and which now poses the threat that the information they revealed to one another will be unconsciously or inadvertently employed to their disadvantage, could have been anticipated. In the somewhat exceptional circumstances presented, the court concludes that the interaction between Professional's counsel and Trinity and that between Trinity's counsel and Professional bear sufficient resemblance to an attorney-

---

macy of legal order. *Cf.* Kaufman, *The Philosophy of Effective Judicial Supervision over Litigation,* 29 F.R.D. 207, 207, 217 (1961).

**7.** *See Allegaert v. Perot, supra,* 565 F.2d at 251; *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir.1975) (Gurfein, J., concurring); *see*

*also* Van Graafeiland, *Lawyer's Conflict of Interest—A Judge's View* (pt. 2), N.Y.L.J., June 20, 1977, at 1, col. 2.

**8.** *See also GAF Corp. v. Heyman,* 559 F.Supp. 748, 753–754 (S.D.N.Y.1983).

client relationship to permit further inquiry into the asserted conflicts of interest. *See Glueck v. Jonathan Logan, Inc., supra,* 653 F.2d at 748–749 & n. 4 ("the issue is not whether ... [the] relationship ... is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved"); *see also Weber v. Shell Oil Co.,* 566 F.2d 602, 607–608 (8th Cir.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).

In a typical case, having resolved the threshold question of the existence of an attorney-client relationship (or something resembling it), the court would next determine whether there was a substantial relationship between the successive matters in which the attorney to be disqualified represented adverse parties. If the requisite substantial relationship existed, the court would "assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the [latter] representation," *T.C. Theatre Corp., supra,* 113 F.Supp. at 268, and would disqualify the attorney to insure that the disclosure of such confidences "did not taint the underlying trial," *Board of Education v. Nyquist, supra,* 590 F.2d at 1246. Despite the fact that one of the original plaintiffs in this case is now a defendant, the realignment of the parties has not otherwise affected the substance of the litigation. Plaintiffs continue to challenge the City of Hartford's policy regarding the provision of emergency ambulance services by private companies; the principal change is that plaintiffs now allege that Professional has replaced G & L Ambulance Services, Inc. as one of the two designated "sole providers." *See* Third Amended Complaint ¶ 9. The matters embraced by the representation of Trinity and Professional before and after the realignment are not only substantially

related, they are the same. Thus, if the substantial relationship test alone were dispositive of this case, disqualification of both Professional's counsel and Trinity's counsel would be unavoidable.

However, in cases concerning prior concurrent representation of two parties by an attorney who subsequently represents one of them in an adversary proceeding against the other, courts have held that the substantial relationship test is not implicated unless it can be shown that

> the attorney [to be disqualified] had been in a position where he could have received information which the former client might reasonably have assumed the attorney would have withheld (i.e., kept secret) from the particular person who is now the opponent.

*Allegaert v. Perot,* 434 F.Supp. 790, 798 (S.D.N.Y.), *aff'd,* 565 F.2d 246 (2d Cir.1977); *see Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 501 F.Supp. 326, 330 (D.D.C.1980) (H. Greene, J.); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 479 F.Supp. 465, 468–469 (E.D.La.1979).[9]

In this case, a realignment occurring midway through the litigation has placed parties formerly allied in interest in opposing camps. While none of the decisions cited address this exact situation, they are nevertheless instructive. In *Allegaert v. Perot,* for example, the attorneys sought to be disqualified had represented two brokerage firms in the execution of a joint venture agreement between them. One of the brokerage firms was a "regular" client represented by the attorneys on a continuing basis. In subsequent bankruptcy proceedings regarding the other firm, the trustee contended that the attorneys ought to be disqualified from representing their regular client because their earlier representation of the bankrupt firm in relation to the joint venture agreement was substantially

---

9. *See also Moritz v. Medical Protective Co.,* 428 F.Supp. 865 (W.D.Wis.1977). In *Moritz,* the court stated that where a previously "common" attorney subsequently represents one party in litigation against the other, "there is something approaching a presumption that any information obtained by the attorney from either [party] might properly have been disclosed to the other...." *Id.* at 874.

related to the bankruptcy.[10] The district court found that the bankrupt firm could not have supposed that the attorneys, while representing it in regard to the joint venture agreement, "were accepting confidences which they would withhold ... from their ... primary clients." 434 F.Supp. at 798. As a result, the court concluded that the substantial relationship test was inapposite and held that disqualification of the attorneys was not required.

In a similar vein, information obtained by Trinity's counsel in his interaction with Professional, as well as knowledge gained by Professional's counsel in his dealings with Trinity and Aetna, does not constitute, *as between these parties*, "confidences and secrets" protected from disclosure by Canon 4. The reasonable-expectation-of-secrecy requirement of *Allegaert v. Perot* is applicable here; there is nothing about representation of corporate entities in commercial transactions (as opposed to representation of corporate entities in litigation) which dictates otherwise. The expectation that information conveyed to a co-party's counsel will be held in confidence from that attorney's client is no more plausible than the expectation that an attorney concurrently representing parties in the execution of a joint venture or franchise agreement will keep information relayed to him by one party secret from the other. In both situations, the party seeking disqualification should have been aware at the time of the previous transaction or proceeding that information garnered by attorneys in the course of furthering the common enterprise would be revealed by those attorneys to the other parties involved.[11] That the adversity of interests in this instance arose during the pendency of a single lawsuit—rather than in a subsequent action, as in *Allegaert v. Perot* and the other cases—is of no consequence. Information does not become more or less confidential because its disclosure is threatened in the same proceeding rather than in a separate, subsequent proceeding.

Neither Trinity nor Professional has a valid claim of confidentiality as against the other with respect to information changing hands prior to the realignment of the parties. Consequently, Professional's motion to disqualify Trinity's counsel must be denied. A further complication is introduced by Trinity's motion to disqualify, however. When Professional was joined as a party defendant in this action, it became involved, albeit involuntarily, in the sort of cooperative venture with the other defendants in which it had participated as a plaintiff prior to the realignment. Although Trinity could not have assumed that information divulged to Professional's counsel would be withheld from Professional, it was entitled to assume that such information was confidential "with respect to the whole world except [the] particular persons whom [Trinity] knew to be [his] clients." *Allegaert v. Perot, supra,* 434 F.Supp. at 799 n. 12. The danger that information which Trinity intended to make known only to its fellow plaintiffs will now inadvertently be disclosed to the other defendants requires that Trinity's motion to disqualify Professional's counsel be granted.

It should be noted that this result is not a reflection on the integrity of Professional's counsel, whose adherence to applicable standards of professional conduct has not been called into question. Rather, disquali-

---

10. Similarly, *Domed Stadium Hotel, Inc.* and *Williamsburg Wax Museum, Inc.* involved prior concurrent representation in commercial transactions, in both cases the execution of a franchise agreement.

In *Moritz v. Medical Protective Co., see* note 9 *supra,* the prior concurrent representation was in relation to litigation, but the case dealt with the unique relationship between an insurer, its insured, and the attorney retained by the insurer to defend a claim against the insured. *See generally* Code of Professional Responsibility, EC 5–17 (1980); Restatement (Second) of Judgments § 58 (1982).

11. The Uniform Rules of Evidence provide that the attorney-client privilege does not apply "to a communication relevant to a matter of common interest between two or more clients if made by any of them to a lawyer whom they have retained or consulted in common when offered in an action between any of such clients." Unif.R. Evid. 502(d)(5), 13 U.L.A. 209, 251 (1980).

fication is mandated by a prophylactic rule designed to insure that "[m]atters disclosed by clients under the protective seal of the attorney-client relationship and intended in their defense should not be used as weapons of the offense." *T.C. Theatre Corp.*, 113 F.Supp. at 269.

### Conclusion

For the reasons stated above, Trinity's motion to disqualify Professional's counsel is hereby granted, and Professional's motion to disqualify Trinity's counsel is hereby denied.

It is so ordered.