Russell KLEIN, et al., Plaintiffs,

v.

CHURCHILL COAL CORPORATION, et al., Defendants.

Henry ACCARINO, et al., Plaintiffs,

v.

CHURCHILL COAL CORPORATION, et al., Defendants.

Eli BALLAN, et al., Plaintiffs,

v.

CHURCHILL COAL CORPORATION, et al., Defendants.

Earl ADLER, et al., Plaintiffs,

v.

CHURCHILL COAL CORPORATION, et al., Defendants.

John BLUME, et al., Plaintiffs,

v.

CHURCHILL COAL CORPORATION, et al., Defendants.

Nos. 84 Civ. 6509 (WK), 84 Civ. 7326 (WK), 84 Civ. 7327 (WK), 84 Civ. 7350 (WK), and 84 Civ. 7351 (WK).

United States District Court, S.D. New York.

June 26, 1985.

As Amended July 16, 1985.

Sheber, Pomerantz, Slotnik & Hamburg by Sol V. Slotnik, New York City, for plaintiffs.

Newman, Tannenbaum, Helpern, Syracuse and Hirschtritt by Ralph A. Siciliano, New York City, for defendant Haber.

Schwarzfeld, Ganfer, Shore & Rosenblum by Neil Schwarzfeld, New York City, for defendants Gordon and Churchill Coal.

## MEMORANDUM & ORDER & ORDER OF REFERENCE

WHITMAN KNAPP, District Judge.

In each of these five related complaints, plaintiffs allege, among other things, a variety of federal securities law violations. The actions are before us on several motions. Larry Haber ("Haber"), a defendant in only one of the cases (*Klein v. Churchill Coal Corp., et al.*, 84 Civ. 6509), moves to disqualify Sheber, Pomerantz, Slotnik & Hamburg ("Sheber Pomerantz"), the law firm representing plaintiffs, on the ground that a member of that firm, Michael J. Sheber ("Sheber"), previously represented him in a matter substantially related to the *Klein* action. Larry Gordon ("Gordon"), a defendant in all five cases, similarly moves to disqualify plaintiffs' counsel from participating in each of them. Plaintiffs crossmove for a protective order and sanctions.

## HABER DISQUALIFICATION MOTION

■ Pursuant to Canon 4 of the Code of Professional Responsibility, an attorney should be disqualified if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior representation. *NCK Organization, Ltd. v. Bregman* (2d Cir. 1976) 542 F.2d 128, 132–34; *Hull v. Celanese Corp.* (2d Cir.1975) 513 F.2d 568, 571; *Emle Industries, Inc. v. Patentex, Inc.* (2d Cir.1973) 478 F.2d 562, 570. Once the substantial relationship is established, the court need not inquire whether the attorney in fact received confidential information. Rather, where "it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation, ... it is the court's duty to order the attorney disqualified." (Emphasis in original.) *Emle Industries v. Patentex, Inc.*, 478 F.2d at 571, quoting *T.C. Theatre Corp. v. Warner Bros. Pictures* (S.D.N.Y.1953) 113 F.Supp. 265, 269.

We believe that the instant case falls within this strictly enforced rule. In March 1982 Haber retained Sheber (who was then a sole practitioner) to represent him in the Court of Claims to contest an Internal Revenue Service assessment. The Internal Revenue Service had notified Haber that, as a former officer of Churchill Coal Corporation ("Churchill Coal"), he was liable for approximately $150,000 of unpaid withholding taxes for Churchill Coal employees. As we understand it, the issue in that proceeding was whether Haber had in 1979 been a "responsible officer" of the corporation. To enable his attorney to address that issue, Haber asserts, he spoke with him at length about his role and activity as vice president of Churchill Coal.

In the instant *Klein* action, plaintiffs allege that from November 1978 to the present, defendants (including Haber) violated federal securities laws in connection with the offer, purchase and sale of working interests and pooling interests in mining land. A major component of plaintiffs' allegations is that defendants made material misrepresentations and omissions in a memorandum used in connection with the purchase and sale of the working interests. In ¶ 45 of the *Klein* complaint, plaintiffs allege:

The defendants [including Haber] ... willfully and deliberately, or recklessly, misrepresented, or failed to disclose:

\* \* \* \* \* \*

(d) that some of the corporations and individuals named in the North and South Programs as having been retained to perform services for the North and

South Programs were controlled by one another and/or under common control with defendant Churchill Coal and its affiliates, and the nature of the relationships among them, and the background of the individual defendants, Gordon, Haber, and Bloom and their lack of any experience in the coal industry, including the fact that defendants Gordon and Bloom were professional photographers and that defendant Haber had formerly been a bank officer at Bankers Trust Company with which Churchill Coal had a banking relationship;

\* \* \* \* \* \*

(1) that defendant Churchill Coal and its affiliates and controlling persons would receive additional compensation, directly or indirectly, by virtue of their relationship to defendants Delta Energy Corp. and C & C Mining Corp. and the fees to be paid to Delta Energy Corp. and C & C Mining Corp. under the Programs;

\* \* \* \* \* \*

Without going into the details of the allegations, it is obvious that it will be necessary—or at the very least helpful—for the plaintiffs, in making out a case against Haber, to establish the extent of his involvement with Churchill Coal. As that was the very issue before the Court of Claims, it inexorably follows that a reasonable probability exists that Haber relayed confidential information to Sheber which could be used against him in the instant action. *See Trone v. Smith* (9th Cir.1980) 621 F.2d 994, 1000 ("The relationship is measured by the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations").

Ordinarily such a finding of substantial relationship and the possibility that confidential information has been conveyed would end the inquiry. However, plaintiffs assert that Haber, aware of a possible conflict of interest between himself and the present plaintiffs, deliberately concealed from Sheber facts giving rise to that conflict for the precise purpose of inducing

him to undertake a representation he would otherwise decline.

The facts giving rise to that potential conflict are as follows. In February, 1982 —a month prior to his retention by Haber—Sheber had been retained by Coal Pool Management Corporation ("Coal Pool") to represent investors in twenty different coal partnerships and programs, which partnerships and programs were offered and sold to the investors by (among others) Churchill Coal in the years 1976, 1977, and 1978. The investors were at risk because the Internal Revenue Service was seeking to disallow deductions claimed by them. Plaintiffs now assert that in March 1982, at the time Haber requested that Sheber assist him in the defense of a proposed assessment by the Internal Revenue Service relating to his activities as an officer of Churchill Coal (which action was unrelated to the Internal Revenue Service action with respect to deductions by investors of the Churchill Coal properties), Haber was fully aware that Sheber had been retained by Coal Pool to represent the investors in Churchill Coal's shelter offerings. *See* Sheber Affidavit dated March 18, 1985, ¶ 6. Furthermore, Sheber asserts that at his initial meeting with Haber—prior to being retained—he asked Haber to outline his involvement with Churchill Coal precisely so he could make an intelligent decision as to whether a future conflict might arise. *Id.* at ¶ 7. Sheber contends that at this meeting and during subsequent discussions Haber deliberately misrepresented his involvement with Churchill Coal:

> Unfortunately, Mr. Haber, among other things, deliberately did not disclose to me that he was an officer of C & C Mining Corporation, one of the front operating corporations of Churchill, nor did he disclose to me his other involvements with Churchill[.]

*Id.* at ¶ 7, *see also* Transcript of Oral Argument dated May 3, 1985, 14–29; Memorandum of Law in Opposition to Motion by Certain Defendants to Disqualify Plaintiffs' Counsel and For Sanctions, 2–5.

Sheber asserts that by November, 1983, he began to learn of the true relationship between Haber and Churchill Coal and immediately moved to withdraw as counsel, which motion was granted in January, 1983.[1] Sheber contends that had Haber been forthright from the outset, he would never have accepted Haber's case because of the potential future conflict with his newly acquired major client. Haber, on the other hand, flatly denies that he misrepresented his role with Churchill Coal or that he misled Sheber in any way at all.

■ We think it obvious that a person may not immunize himself from suit by a lawyer by fraudulently maneuvering the lawyer into a position where he might be said to have a conflict of interest. This motion cannot be decided without resolving the factual dispute surrounding these claims. We therefore refer this case to the Honorable Michael Dolinger, United States Magistrate, to conduct hearings and recommend a finding on the issue of whether or not Haber, in inducing Sheber to accept a retainer, deliberately misled him by concealing facts which might have led him to reject employment on the ground of possible conflict of interest.

### GORDON AND CHURCHILL COAL MOTION

Defendants Gordon and Churchill Coal[2] also move for disqualification of plaintiffs' firm. They, however, face the initial hurdle of showing that they were once represented by plaintiffs' counsel. Defendants put forth two arguments to show this "prior representation:" First, that Sheber Pomerantz indirectly represented the defendants by a prior representation of an alleged affiliate of Churchill Coal, and second, that Churchill Coal itself was formerly represented by Sheber Pomerantz. We find both assertions to be without merit.

■ Defendants first argue that Coal Pool, a client of Sheber's since February 1982, was an affiliate of Churchill Coal, and that representation of the alleged affiliate in a tax litigation initiated by the Internal Revenue Service in 1982 was tantamount to representation of defendants Gordon and Churchill Coal. Coal Pool was formed in 1981 to replace Delta Energy Corporation ("Delta") as the operating manager for the various partnerships and programs at issue in this case. Although there is some evidence that Delta was an affiliate of Churchill Coal, there is no evidence that such a relationship existed between Coal Pool and Churchill Coal.

■ Defendants base their claim of the existence of the relationship on Gordon's claim that, because of Sheber's representation of Coal Pool, Gordon "regarded Mr. Sheber as my attorney." Gordon Affidavit dated February 8, 1985, ¶ 11. He there states:

> Because Mr. Sheber required information concerning the prior offerings of the various programs and partnerships, he sought all of Churchill Coal's files relating to the various program's [sic] and partnership's [sic] properties. Since I regarded Mr. Sheber as my attorney, I caused all of my files regarding the programs and partnerships to be delivered to him without making any copies. The files have not yet been returned.

Plaintiffs, however, refute Gordon's assertion with a detailed account of their frustrating efforts to obtain those files. *See* Affidavit of Michael J. Sheber dated March 18, 1985, ¶¶ 13–18. Such account—which has not been disputed—hardly comports with Gordon's claim that he regarded Sheber as his attorney by virtue of the alleged affiliated relationship.

■ Defendants next argue that Sheber directly represented Churchill Coal. Their contention appears to us to be based on

---

1. In February of 1983 Haber filed a complaint against Sheber based on his withdrawal as counsel. The Departmental Disciplinary Committee of the Supreme Court, Appellate Division, First Judicial Department dismissed the complaint.

2. For no apparent reason Churchill Capital Corporation joins in the motion as well.

two theories: First, that certain mailings were made from Coal Pool to Churchill Coal and that certain confidential attorney/client documents were found in Gordon's files, and second, that Churchill had a limited partnership interest in three of the twenty coal programs and partnerships which Sheber was retained to represent in February 1982 by Coal Pool.

As to the first, defendants have presented two envelopes addressed to Churchill Coal, sent from Coal Pool (Exhibit A to affidavit of Neal Schwarzfeld dated April 26, 1985, and Exhibit F to affidavit of Larry Gordon dated April 10, 1985) and a variety of documents, some of which are claimed to have been sent in those envelopes, and some of which merely came from Gordon's files without explanation. The envelopes clearly show that Coal Pool—not Sheber Pomerantz—sent material to Churchill Coal. The items claimed to have been contained within an envelope postmarked April 13, 1983 are not privileged and suggest no attorney/client relationship. The other envelope appears to have had some kind of ballot enclosed. Although one document found in Gordon's file comes from Sheber Pomerantz and is clearly marked as subject to the attorney/client privilege, Gordon offers no sound explanation for how he got it.

Defendants' second theory is that Sheber Pomerantz, through its representation of the twenty partnerships and programs with respect to IRS deficiencies, directly represented Churchill Coal as it was a limited partner in three of those programs (Beaver Creek Coal Co., Butex Mining Co. and Tabor Mining Co.). We think this representation too attenuated to be characterized as direct representation of Churchill, and too attenuated even to create an appearance of impropriety.

The lack of any relationship or representation between the attorneys and defendants Gordon and Churchill Coal is buttressed by the fact that on October 27, 1983 a deposition took place in the United States Bankruptcy Court in *In the Matter of Churchill Coal*, a different but obviously somewhat related action; the person being deposed was Gordon, and the attorney conducting the examination, representing Coal Pool, was Sheber. Neither Gordon nor his attorneys, either at that time or subsequently, have ever suggested the need for disqualification of Sheber Pomerantz in that action.

 Even if, however, we were to strain the meager evidence and find a prior representation, Gordon and Churchill Coal would still be required to show: (1) a substantial relationship between the subject matter of the prior representation and the issues in the present lawsuit, and (2) that the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client. Even if we assume a substantial relationship, defendants are unable to show even a possibility that confidential information could have been conveyed.[3] At oral argument on the motion, counsel for Gordon and Churchill Coal stated on the record and in open court that absolutely no confidential information had ever been conveyed from his clients to Sheber Pomerantz. This admission, of course, comports with our understanding that the claimed representation was so attenuated that the alleged clients never spoke to their attorneys and the attorneys had no idea that they were retained by these clients.

Finally, Churchill Coal and Gordon argue for Sheber Pomerantz's disqualification on the ground that they intend to call Sheber as a fact witness. Although we think it highly improbable that Sheber will be so called, if such a problem arises, we will deal with it prior to trial.

---

3. Such a showing is necessary for disqualification. *See Allegaert v. Perot* (2d Cir.1977) 565 F.2d 246, 251 ("[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." Emphasis in original).

We note in closing that our decision may create a situation in which Sheber Pomerantz would be disqualified from only one of the related actions. If this should occur we will then consider what action to take with respect to defendants' request to consolidate.

In summary, defendant Haber's motion to disqualify is held in abeyance pending a Report and Recommendation from Magistrate Dolinger. Defendants Gordon and Churchill Coal's motion for disqualification is denied. And, in accordance with our rulings at oral argument, plaintiffs' motion for a protective order is denied and Haber's motion to dismiss pursuant to Rule 12(b)(6) is adjourned to a date to be set by the Court. All pending motions to dismiss are similarly adjourned; a briefing schedule will be set by the Court after a final determination of Haber's motion to disqualify.

SO ORDERED.